## HUTCHINSON *v.* THACHER.

*Principal and Surety.* *Liability of Co-Sureties.* *Want of Consideration.*

Plaintiff and defendant were indorsers of a promissory note whereof M. was payee. The makers became bankrupt, and plaintiff paid the note, which M. had procured to be discounted. The makers compounded with their creditors, and plaintiff received his *pro-rata* portion, and with the advice and consent of defendant, and upon his agreement that his liability should not be thereby affected, discharged the makers from further liability. *Held*, that the liability of the indorsers was fixed by the insolvency of the makers; that when plaintiff paid the note, defendant became liable to contribute a moiety; and that defendant was estopped from questioning the agreement that induced the discharge.

M., the payee of a promissory note, asked defendant to indorse it, which he refused to do unless plaintiff would indorse it. M. promised to procure plaintiff to indorse it, whereupon defendant indorsed it. Plaintiff, on being asked to indorse it, refused to do so unless M. would procure defendant to sign with him a note for a like sum, payable to plaintiff, as security therefor, which M. agreed to do, whereupon plaintiff indorsed it. M. afterwards procured defendant to sign the second note, as agreed, and delivered it to plaintiff. *Held*, that as the second note was given without any new consideration, for the purpose of indemnifying plaintiff for indorsing the first note, on which plaintiff and defendant were naked co-sureties, the second note was, as between the parties, *nudum pactum*, and invalid.

ASSUMPSIT. Pleas, general issue and discharge. Trial by the court, May Term, 1876, BARRETT, J., presiding.

The declaration, which contained the common counts, counted specially on a note for $125, dated November 23, 1874, payable in thirty days to the order of plaintiff, and signed by defendant and John McCarty. The plea alleged that the note declared on was the proper debt of W. K. and G. A. Richardson ; that they were primarily liable, and defendant was a mere surety for them, as plaintiff well knew ; that said Richardsons and their creditors, of whom plaintiff was one, mutually agreed upon a compromise of all debts and demands against said Richardsons, by the terms of which said Richardsons were to pay ten per cent. of all their said debts and demands, and thereupon to have a full discharge there-from ; that in pursuance of said agreement said Richardsons paid to plaintiff ten per cent. of the debt on which defendant was surety, and of all other demands, in consideration whereof plaintiff executed to them a writing fully discharging them from all debts and demands sought to be recovered in this action.

Plaintiff introduced in evidence a note for $125, dated October 21, 1874, payable sixty days from date, to the order of John McCarty, signed by W. K. & G. A. Richardson, and indorsed by McCarty and the plaintiff and defendant; and a note for $125, dated November 23, 1874, payable thirty days from date, to plaintiff's order, and signed by McCarty and defendant; also the discount book of the Woodstock National Bank, by which it appeared that the Richardson note was discounted on November 11, 1874. From said notes and book and plaintiff's own testimony and the testimony of William E. Johnson, whom plaintiff produced as a witness, the court found that McCarty, who was wanting to get the Richardson note discounted, took it to defendant, and asked him to indorse it, which he declined to do unless it was also indorsed by plaintiff and one Davis ; that McCarty then agreed to procure their indorsement, whereupon defendant indorsed it, no agreement being made that defendant should indemnify plaintiff for indorsing it, and nothing being said about it ; that McCarty then took the note to plaintiff and asked him to indorse it ; that plaintiff refused to indorse it without security, but said

he would do it if McCarty would procure defendant to sign with him a note of like amount payable to the plaintiff, as security therefor, which McCarty agreed to do, whereupon plaintiff made the indorsement as requested ; that afterwards, on November 23, McCarty got defendant to sign the note of that date, and delivered it to plaintiff, telling defendant that plaintiff wanted it as security for his indorsement of the Richardson note, and that Davis had not signed the Richardson note ; that there was no conversation except as above stated between either defendant or plaintiff and McCarty about the giving of the note of 'November 23 ; that the Richardson note was discounted for McCarty by the Woodstock National Bank on November 11, as shown by the bank's discount book, and that plaintiff did not have the proceeds ; that the Richardsons failed early in December, and went into bankruptcy, and that on December 27, plaintiff paid the note so discounted, McCarty being insolvent ; that in the ensuing May, defendant, who had indorsed largely for the Richardsons, and wanted to get their property into his own hands in order to close out their business to his own advantage, went to plaintiff and asked him to give him a power of attorney to vote at a meeting of their creditors ; that they went to the law office of Wm. E. Johnson to have the paper drawn, and that while there the defendant was asked by Mr. Johnson, on plaintiff's behalf, whether the giving of that power should in any manner affect his liability on the obligation, to which he replied that it should not, saying that he acknowledged his liability, and expected to pay all that the Richardsons did not, but wanted to get as much out of the Richardsons as he could ; that afterwards defendant effected a compromise with the creditors of the Richardsons at ten cents on the dollar, and paid plaintiff his dividend, which amounted to $13, whereupon plaintiff signed a discharge of the Richardsons, for the purpose, as defendant testified, of carrying out the compromise voted by the creditors, there being nothing then said about defendant's liability ; that defendant heard nothing about the Richardson note after he indorsed it until after the Richardsons failed ; and that plaintiff was surety on the Richardson note.

The court rendered judgment for plaintiff for the amount of the

Richardson note, deducting the amount of the percentage paid ; to which defendant excepted.

*W. C. French*, for defendant.

This court have held a compromise and discharge, such as are set forth in the plea, a good defence. *Paddleford* v. *Thacher*, 48 Vt. 574. The facts testified to do not prevent the operation of the discharge.

The doctrine of estoppel does not apply, as the talk at the time of the giving of the power of attorney could not affect the subsequent act not then in contemplation, the execution of the discharge. *Hicks & Co.* v. *Cram*, 17 Vt. 449 ; *Wakefield* v. *Crossman*, 25 Vt. 298 ; *Woolley* v *Edson*, 35 Vt. 214 ; *Spiller* v. *Scribner*, 36 Vt. 245 ; *Halloran* v. *Whitcomb*, 43 Vt. 306 ; *Ripleys* v. *Billings*, 46 Vt. 542.

The note payable to the plaintiff was without consideration. Both plaintiff and defendant being sureties on the Richardsons' note, and plaintiff having paid it, defendant, if liable at all, would be liable only for a moiety contribution.

*William E. Johnson*, for plaintiff.

Plaintiff did not become joint surety with defendant on the Richardson note. He expressly stipulated with McCarty that he should have security for so indorsing said note, and that agreement was carried out by McCarty's procuring the note described in the declaration. Plaintiff acted in good faith, and in no way misled the defendant. *Adams* v. *Flanagans*, 36 Vt. 400.

Defendant was not released by the arrangement made in reference to the Richardsons. That, as appears by the exceptions, was made at the request of defendant, and upon the express agreement that defendant would pay the balance not paid by the Richardsons. That agreement was made when the power of attorney was given. It matters not that nothing was said when the discharge was signed, for the reason that defendant admits that the discharge was executed for the purpose of carrying out the compromise voted by the creditors, for the purpose of voting which he obtained the power of attorney from the plaintiff. The getting the

62

compromise voted, and the Richardsons discharged, were only different parts of one whole arrangement, and the two parts were both necessary to bring about and accomplish what defendant wanted, *i. e.*, to get the Richardsons' property into his hands so that he could make something out of it more than the ten per cent. to help him pay where he was holden for them. To permit the defendant to be discharged, under the circumstances, is to permit him to commit a fraud on the plaintiff, for there can be no question but before this arrangement with reference to the Richardsons, the defendant was holden to the plaintiff, and this arrangement was entered into by the plaintiff at the defendant's request and for the purpose of assisting him. The court will prevent defendant from taking advantage of his own wrong, and from perpetrating such a fraud.

The opinion of the court was delivered by

REDFIELD, J. This action is assumpsit upon two promissory notes for $125 each. The first was the proper note of the Richardsons, and indorsed by the plaintiff and defendant and one McCarty. The Richardsons failed, and the plaintiff paid the note. The Richardsons compounded with their creditors, and plaintiff received his *pro-rata* proportion with the other creditors, and discharged the Richardsons from further liability. This was done by the advice and consent of defendant, and with his agreement that it should not affect his own liability.

The liability of the sureties to pay the debt had become fixed by the insolvency of the principals; and when the plaintiff paid the debt, defendant became liable to the contribution of one moiety, the other indorser being insolvent. The defendant, having agreed with plaintiff to compromise with the principals and discharge them for a certain sum, which was applied in reducing this burden which was common to both, and that such discharge should not affect his liability,—is estopped from questioning the agreement which induced the discharge. It would be gross bad faith, and work a fraud upon the plaintiff.

II. The defendant refused to indorse said note unless McCarty would procure plaintiff and one Davis to indorse the note

as co-sureties with him, which he agreed to do. The plaintiff and defendant were therefore co-sureties for the Richardsons, and stood on equal footing. · McCarty agreed with the .plaintiff when he indorsed the note, that he would procure defendant to sign with him a note of like amount, payable to the plaintiff, as security or indemnity for indorsing this note ; and on the 23d of the next November did so ; and that note is the one on which recovery was had in the County Court. The second note was given without any new consideration, and the avowed purpose was to secure and indemnify the plaintiff for having indorsed the first note No reason is given in the statement of the case, why defendant should indemnify the plaintiff rather than plaintiff the defendant. Neither had been benefited by the note, and both were naked sureties. The giving of the second note was without benefit to the defendant, and discharged no existing obligation or duty. As between these parties, it was a *naked promise*, without moral or legal obligation. The plaintiff assumed no new duty, and his risk as indorser was not changed. We think the second note is wanting in an essential element that gives life and validity to a contract.

The judgment of the County Court is reversed, and judgment for the plaintiff for one half the sum paid by the plaintiff as indorser of the first-named note, less the sum secured from the Richardsons, with interest and cost, to be computed by the clerk on notice.